**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

CURTIS KEIL

VERSUS

RAY HANSON

R E C E I V E D

DEC 2 2 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY _____

DOCKET: 2014-K-0353
2014-KH-0572

DIVISION: _____

_____
CLERK OF COURT

_____
**FILED**

---

**PETITION FOR WRIT OF HABEAS CORPUS**

---

**PRO SE SUPPLEMENTAL BRIEF OF APPELLANT TO BE ATTACHED TO THE ORIGINAL WRIT OF REVIEW OF THE LOUISIANA SUPREME COURT DECISION NO. 2014-K-0353, AND 2014-KH-0572 FIRST CIRCUIT COURT OF APPEAL DECISION NO: 2012-KA-1976, FILED BY APPELLANT ATTORNEY ON FEBRUARY 15,2014.**

---

**STATEMENT OF JURISDICTION**

**THIS HONORALE COURT HAS SUBJECT MATTER JURISDICTION TO PRESIDE OVER THE INSTANT WRIT OF HABEAS CORPUS, VIA 28 U.S.C. 2254.**

**ON APPEAL FROM AN AGGRIEVED RULING BY THE LA. SUPREME COURT NO: 2014-K-0353 , AND 2014-KH-0572 AND THE FIRST CIRCUIT COURT OF APPEALS NO: 2012-KA-1976. STATE OF LOUISIANA VERSUS CURTIS KEIL....PRO SE LITIGANT 22ND, JUDICIAL DISTRICT COURT PARISH OF WASHINGTON STATE OF LOUISIANA CASE NO. 101008**

## PROCEDURAL HISTORY

Defendant Curtis Keil was charged by Grand Indictment with contravention of LSA-R.S. 14:30.1. relative to second degree. Defendant was formally arraigned and pled not guilty to said charge. Following, defendant was found guilty of the responsive verdict of manslaughter in violation of LSA-R.S. 14:31. Defendant Keil filed motions for new trial and post verdict judgment of acquittal. The trial court denied both motions. Defendant was then sentenced to thirty years at hard labor. Defendant filed a motion to reconsider sentence, but the trial court denied that motion as well. Defendant was represented in his criminal proceedings by two (2) different attorneys, namely John Linder and John Almerico. Defendant appealed his sentence and conviction citing several assignments of error, (1) Sufficiency of the evidence, (2) State's use of inadmissible evidence, (3) False/Perjured testimony, (4) Unlawful and Illegal Verdict, and (5) Ineffective assistance of Counsel. Court of Appeal- First Circuit, affirmed defendant's conviction and sentence.

On January 9, 2014, defendant filed an application for rehearing to the Court of Appeal/ First Circuit, arguing that the district court was in contempt of an interim order issued on October 15, 2013, ordering the trial court reporter to produce the transcript of the ex parte communication the prosecutor and members of the jury were caught engaging in during jury deliberations. This fact was revealed to the trial court by the bailiff on duty on that date and approximate time. It was related that the ADA Lee Ann Walls was caught in the hallway talking to one of the jurors. Whatever information that was exchanged between ADA Walls and the juror, it is not mere speculation to imagine that, that particular juror could have been the swing vote or influence to have caused the unanimous guilty verdict of manslaughter. The appellate court also ordered that if the court reporter could not produce the portion of the transcript pertaining to the ex parte communication, then to submit an explanation to the court regarding why a transcript could not be generated.

As a result of the trial court's reporter's refusal to comply with the appeal court's order, the first circuit court prematurely issued its decision denying motion for rehearing without reviewing the record as whole, gaining a more comprehensive understanding of the nature and legitimacy of this defendant's complaint. At the very least the circuit court could have sought an explanation from the trial court reporter in question. The Circuit Court's affirmation of defendant's sentence and conviction without investigating the facts relative to his complaint of jury tampering by the state, denied the defendant due process and equal protection of the law, and well as his constitutional and statutory right to an equitable and fair appeal. Defendant was represented in his direct appeal by Mr. Prentice L.White, Louisiana bar roll number 24250, Appellate Counsel, Louisiana

Appellate Project, P.O. Box 74385 Baton Rouge, Louisiana 70874, as well as defendant's pro se supplemental brief.

Defendant now submits this ~~supplemental~~ brief in support of the original brief filed by Mr. White on February 15, 2014, *LA. SUPREME COURT DENIED ON NOV. 26, 2014.*

## CHRONOLOGY OF EVENTS

On May 2, 2011 a motion to suppress and quash hearing was held and subsequently denied by the trial court. Defense objected for appellate reasons. Defendant's motion to Reconsider Sentence was also denied. Trial in this matter commenced on October 24th thru October 27th 2001. At the conclusion of the four (4) day trial, the jury returned a guilty responsive verdict of manslaughter on October 27th 2011. The defense filed a motion for New Trial, which was denied by the trial court. Defendant was sentenced to thirty (30) years at hard labor. Defendant's motion for Post Verdict Judgment of Acquittal was denied.

On October 27th 2011 a motion for appeal was filed and granted. This supplemental brief addresses the issues that were subsequently denied on direct appeal; decisions from the trial court and court of appeal 1st circuit.

A motion for rehearing was filed to the court of appeal 1st circuit by Attorney White of the Appellate Project, which was erroneously denied, absent a complete record. *THESE grounds were in return Argued to the LA. Supreme court, which in ERROR of State and Federal laws Denied the Defendants Appeal on November 26, 2014, Defendant RECEIVED word on December 2, 2014, by way of Postal Mail.*

2

## STATEMENT OF THE FACTS

On the 6th day of October 2008, defendant Curtis Keil was arrested at his family's home by Detective Paris Smith of the Washington Parish Sheriff's Office and was subsequently charged with the murder of one Terrance Harris, who was shot and killed on Ann Street in the town of Bogalusa, La. Please note that this arrest within twenty (20) minutes following the alleged shooting without incident, nor did the defendant exercise any effort to flee from or elude the arresting officers. There was never any weapon recovered that was allegedly used in the shooting. Hearsay and innuendo prompted the police to develop the defendant as a suspect in this crime. There were no credible witnesses whom allegedly observed the events on the day in question (10/06/08) who could have positively put Mr. Keil at the scene of the crime. In fact, nor did the alleged eyewitnesses ever pick Mr. Keil out of any photo or live physical line-up. Furthermore, defendant's face was plastered all over the front page of the Washington Parish's Newspaper and the Face book Internet two (2) days following his arrest on (10/08/2008).

The state filed an indictment with the grand jury who in turn issued a true bill charging the defendant with second degree murder. Trial was scheduled. This stage of the defendant's right to direct appeal follows.

## ASSIGNMENTS OF ERROR

1) Was the evidence insufficient to convict; and did the state's witnesses give false and perjured testimony?
1) Did trial court err in allowing the state to use inadmissible evidence at trial, i.e. the use of Sgt. McDaniel' testimony concerning a prior altercation defendant had with the victim?
2) Did trial court err in denying defendant's motions for new trial, post judgment verdict of acquittal, motions to quash and suppress?
3) Did the court of appeal 1st circuit err in affirming defendant's sentence and conviction without reviewing the complete record thereby denying defendant's motion for rehearing, thus compromising his due process right to a fair and impartial appeal? *To include LA. supreme court Affirmation*
4) Was the responsive guilty verdict of manslaughter an illegal verdict?
5) Was Counsel of record ineffective at trial?

## ISSUES PRESENTED

1) Evidence presented at trial was insufficient to convict.
2) The state's witnesses gave false and perjured testimony at trial.
3) The trial court erred in allowing the state to use inadmissible evidence at trial, i.e. Sgt. Mc Daniel's testimony concerning a prior altercation the defendant had with the victim. *(No evidence presented)*
4) The trial court erred in denying defendant's for motion new trial, post verdict judgment of acquittal and motions to quash and suppress. *(Motion to suppress + Quash states alleged eye witnesses)*
5) The court of appeal 1st circuit erred in affirming defendant's sentence and conviction without reviewing the complete record thereby denying defendant's motion for rehearing thus compromising his right to due process and a fair and impartial appeal. *(As well as the LA. supreme court.)*
6) The responsive guilty verdict of manslaughter was an illegal verdict.
7) Counsels of record were ineffective at trial.

## ARGUMENT

### Assignment of error # 1

The evidence presented at trial was insufficient to convict, and the state's witnesses gave false and perjured testimony at trial.

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused maybe entitled to an acquittal under **Hudson v. Louisiana, 450 U.S. 40, 101 S. Ct. 970, 67 L.Ed. 2d 30 (1981)**, if a rational trier of fact viewing the evidence in accord with **Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979)**, in the light most favorable to the prosecution could not reasonably conclude that all of the essential elements of the crime have been proven beyond a reasonable doubt. **State v. Bellamy, 599 So.2d 326 (La. App. 2d. Cir.) Writ denied 605 So.2d 1089 (La. 1992); State v. Hall,26, 505 (La. App. 2d. Cir. 12/7/94), 606 So.2d 453.**

3

In this instant case at bar, the defendant alleges that the verdict is contrary to the law. The evidence produce at trial and the state failed to remove every reasonable hypothesis of innocence. The evidence was insufficient to convict him of the charge of second degree murder of which he was acquitted and even more insufficient to convict of the responsive verdict of manslaughter.

The evidence presented at trial was not sufficient enough to support the conviction to pass constitutional muster under **_Jackson v. Virginia, supra._** Defendant herein asserts that there was no physical or scientific evidence presented, nor was there any physical or photo line up process whereby the alleged witnesses could positively identify him as the shooter. A conviction based on insufficient evidence cannot stand as it violated due process: **_U.S. Const. Amend. 14th, Article 1, Section 2._**

The Jackson standard of review incorporated into **Article 821 (B) La. C.CR.P., is** an objective standard for testing the overall evidence both direct and circumstantial for reasonable doubt.

The verdict of guilty of manslaughter in this instant case is contrary to the evidence presented by the state in its case in chief. The statements and testimony was inconsistent, false, perjured and limited to circumstantial evidence. The rule as to circumstantial evidence is, assuming every fact to be proven that the evidence tends to prove. In order to convict it must exclude every reasonable hypothesis of innocence (supported by LSA- R.S. 15:438). In this instant case, there are myriad of other interpretations for the limited circumstantial evidence that the state presented and consequently the jury's verdict is contrary to the evidence presented at trial or lack thereof. And as such, an acquittal is mandated in this case.

**Pursuant to article 851 (5), the trial judge reviews the evidence as the 13th juror when either 851 (1) or 851 (5) are the grounds for a new trial…..State v. Watts, 835 So.2d 441, 449, (La. 2003), see also State versus Jeanlouis, 683 So. 2d 1355 (La. App.3rd Cir. 1996).**

The 13th juror standard directs the trial court to reweigh the evidence and either agree or disagree with the jury's decision. A trial judge who sits as a 13th juror entertains such questions as, 1) was the verdict contrary to the law? 2) Was the verdict contrary to the evidence? 3) Does the verdict fall short of serving the best interest of justice? Thus, if the answer to any question such as above suggested is yes, then the defendant's conviction shall not stand. The defendant herein asserts in view of the substantial lack of credible evidence, and the fact that ADA Walls allowed state witnesses to give false testimony without correction, combined with the fact that the testimony at issue has been shown to be false and material to the defendant's allegation that the officers did lie on the stand, prejudiced his defense. The prosecution knew that their testimonies was false and yet ADA Leann Walls did absolutely nothing to correct it (see exhibit # **"A"**, Police Report, pages 5 &6 and trial transcripts pages 1110, 1111 and 326 as listed in pro se brief exhibit# **"B"**, page 10). It is incumbent upon this Honorable Court to reweigh the evidence against him sitting as the 13th juror, which necessarily includes a review of the credibility of the witnesses' testimony and the lack of physical evidence presented by the state. *(Also to review false + persurga Testimony)*

This instant trial was replete with false statements, inconsistent and perjured testimony. The police conducted a thorough search of the defendant's home and land. His vehicle was towed away, examined and found to be free of any evidence that would link the defendant to this crime. All of this transpired within a twenty (20) minute time frame, between the time of the crime and the defendant's arrest at his home. The search yielded zero results in terms of evidence, either physical of scientific (i.e. weapons, DNA, gun powder residue; not to mention there was no positive identification by any of the alleged witnesses that would link the defendant to the crime scene, (see exhibit # **"A"**, Police Report…page six (6)….**State v. Parent, 01-50 pg. 7 (La. 5th Cir. 5/30/01, 788 So.2d 685, 689. See also trial transcripts pages 1110, 1111, and 326.** *, See Also Exhibit G - Internal Contradictions.*

Reliability is the linchpin in determining the admissibility of identification testimony for confrontations. The factors to be weighed against the corrupting effect of the suggestive procedure is assessing reliability are set out in **Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375, 34 L.Ed. 2d 401 and include the witness' opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation and the time between the crime and the confrontation. See also Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed. 2d 140,.**

In this case at bar there was never any live or photo line up by any of the alleged witnesses to identify the defendant. **His identity was unknown even to the 911 caller.**

Furthermore, it would have been virtually impossible for the defendant to have cleaned himself of any blood, DNA, gun powder residue resulting from a bloody crime scene. If the defendant had shot from the car as he was allegedly leaving the crime scene, there should have been physical evidence to support

4

that allegation. The vehicle was examined and impounded for two (2) months and no evidence of any kind was ever found and the vehicle was returned to defendant's family. Moreover, without any positive identification out of court or otherwise the evidence was insufficient to convict the defendant of this crime.

In this instant case at bar, the defendant was not recognizable by any of the state's witnesses, whom by the state's own admission were not credible at time of incident. However these same witnesses became suddenly credible three (3) years later at trial. Defendant asserts that because his photo was plastered on the front page of the Washington Parish Newspaper and Face book Internet a mere two days after his arrest before he was positively identified by any witnesses at trial three years later. This article was published on 8th of October 2008. (See exhibit # B) The importance of this fact is to show this reviewing court that because of the newspaper and face book photos and stories, the alleged eyewitnesses were able to pick the defendant out at trial three (3) years later. That act violates the landmark decisions decided in Manson v. Brathwaite, supra. (See exhibit # "B", page 12) Furthermore at the time of the incident there was no description of the type of clothing the suspect wore or his body type, skin color, or any other distinguishing features made by any of the so called "eyewitnesses" whom were all alleged to have been in close proximity to the incident. See exhibit #"B", page 10 of the Motion to Quash and Suppress Hearing transcripts on 5/02/2011). See also State v. Parent, supra, "Internal Conflicts of Physical Evidence", see also *State v. Powell..App. 2d Cir. 1996, 677 So.2d 1008, 27, 959 (La. App. 2d Cir. 4/19/96). Writ denied, 688 So.2d 520.*   Furthermore, the fact that the state conceded that Mr. Keil did not make a statement and there were no credible eyewitnesses but then doing a complete reversal on the brink of jury selection by informing the court that it had intended to introduce at trial a statement that the defendant Keil allegedly made to the police after being read his constitutional rights under Miranda. The fact is that the only thing Keil said is contained in the record..(.see exhibit #"A", pages 5/6 police report). For the state to give two (2) different and conflicting statements to the court in any criminal proceeding has to be construed as prosecutorial misconduct and that conduct by the state attributed to a gross miscarriage of justice in denying defendant Keil a fair and equitable trial. In addition to the state's underhanded tactics which undermined defendant Keil's defensive effort to declare his innocence of this crime, the trial court erred in allowing the state to present this "phantom" statement to the jury when it denied the motion to suppress. *(See TR, pages 1110, 1111, and 326).* ADA LeAnn Walls knew from the start that there was never any confession or statement offered by the defendant to any police officer, yet she lied to the court armed with the knowledge that she could not produce such a statement, written, recorded or otherwise to support her allegation.

"Prosecutor's prejudicial remarks suggesting during cross-examination of defendant that more drugs existed at defendant's trailer was improper without evidence of the drugs or paraphernalia and warranted mistrial in prosecution for possession WITD Methamphetamine or drugs or paraphernalia in the trailer... *State v. Gay, 616 So.2d 1290 (La. App. 2d Cir. 1993). Reversed, vacated and remanded for new trial.*   ADA Walls deliberately lied to the court and in the process caused her witnesses to give perjured and false testimony. That act substantially prejudiced the defendant's trial and caused irreparable harm. The jury in defendant Keil's trial may have very well convicted the defendant of the lesser included offense because it heard repeated references that he made confession/ statement that the state could not produce. Absent the error there is a reasonable probability that the jury would have had reasonable doubt respecting the defendant's guilt of the offense of manslaughter. It was the duty of the trial court to protect against technical loss of the defendant's basic constitutional rights by not allowing unreliable and otherwise inadmissible evidence to be presented at trial. To allow the jury to hear the perjured and false testimony constituted an abuse of discretion and a denial of defendant Keil's constitutional right to present a defense, particularly where the state's case depended largely on Culpper's and Phelps' false and perjured testimony. See TR., pages 1110, 1111, and 326, also see exhibit # "B" pro se exhibit, pages 10 and 11 and pages 5 and 6 of exhibit # "A", police report.

The right to present a defense is a fundamental constitutional right in a criminal case.....*LA Const., Article 1, Section 16.* In as much as the statements by Culpper and Phelps substantially affected the outcome of the jury's decisions on whether he made the statement three (3) years earlier was not harmless error beyond a reasonable doubt. Whenever the credibility of witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must be first be asked did he make such a statement. Here in the instant, defense counsel questioned Capt. Culpper under oath as to the author of the police report and its contents and his response was that he wrote it. This indicates that the state's position

5

regarding a statement allegedly made by the defendant and given to Lt. Phelps was bogus and a blatant lie. Defendant and Lt. Phelps never had any contact at any time or anyplace. It is against police protocol to either record or have the statement written or typed and have the suspect sign it for the record. A defendant does not have to conduct a "fishing expedition" to declare his innocence. The law of the land is "innocent until proven guilty". Primarily when the arrest and conviction rested upon false and perjured testimony the case demands an acquittal.

In the case at bar, the facts are indisputable. <u>__FACTS__</u>: 1) In his police report Officer Culpper unequivocally stated "upon arriving at the residence, Detective Paris Smith advised him that he had Mirandized the defendant Keil and that Keil had elected not to give a statement unless a lawyer was present." (See exhibit # "**A**", police report, pages 5 and 6.) 2) At the motion to quash/ suppress hearing held on 5/2/11 and 8/10/2009. ADA Leann Walls stipulated for the record that the defense's motion to suppress was moot because in fact defendant Keil did not make any statements or confessions to the police. Moreover, she also stated that there were no credible witnesses to the shooting; however on August 2011 ADA Walls informed the court of the existence of a statement allegedly given by defendant Keil to Lt. Donald Ray Phelps at the time of arrest. Ironically, the state was never able to produce any statement or confession. (See exhibit # "**C**", ruling from the court of appeal 1st cir. page 7.) 4) If the state did indeed have a statement, which the defense denies, it violated discovery rules by withholding it from the defense. That is a denial of due process. That evidence should have been made available to the defense. Lt. Phelps was never on the scene of arrest; see police report, page 6, authored by Capt. Joe Culpper, exhibit # "**A**". Any information that Lt. Phelps testified to under oath was the result of fabrication. He never had any dialogue with defendant Keil. That in and of itself, makes his testimony false and inadmissible. In the three (3) years between the incident and the trial, Lt. Phelps never made an incident report, investigative report or follow-up report relative to this case. His version of events surrounding the crime was proven to be completely false by the testimony of Officer Paris Smith and the police reports themselves. (See exhibit # ___A___ , police report, pages 5 and 6) see also TR, page 991.

Defendant submits that in __*Napue v. Illinois* 360 U.S. 264, 79 S. Ct. 1173,__ 3L.Ed.2d 1117 (1959), the court decided that "a conviction obtained by the knowing use of such testimony must fall, and suggested that the conviction is in valid even when the perjured testimony is not the result of guile or desire to prejudice, for its impact was the same, preventing, as it did, a trial that in any real sense could be termed fair. __*Id, at 270, 79 S.Ct. at 1177, quoting People v. Savvides, 1 NY 2d 554, 557, 154 NY S. 2d 885, 886 -888, 136 N. E. 2d 853, 854-855,(1956).__

Furthermore, the fact that defense counsel argued in his brief to the court of appeal-1st –circuit complaining about late disclosures only scratches the surfaces. For the state to allege the existence of a statement and not be able to verify it by certified written proof or video or camera, etc., and the fact that Culpper agreed to the statement after reporting there was no statement at arrest or anytime thereafter constitutes prosecutorial misconduct, malfeasance in office and malfeasance in office tampering with evidence and perjury. (See, R.S. 14:134, 134.2, La. C.Cr.P.); see also U.S. Aguilar , 645 F3rd 319 (5th Cir. 2011) Where the court noted that the prosecutor must win fairly or is a constitutional violation, and because of unfairness and breach of integrity at the district court level, this constitutes reversible error. Courts have consistently held that any unethical practices by the prosecution during the course of a criminal proceeding, i.e. jury tampering, withholding discovery, supplying false information to the court, etc., is amply described as prosecutorial misconduct, as decided in the federal rulings cited in __*U.S. v. Lopez Avila, 678 F 3rd 955, (9th Cir. 2012); Berger v. U.S. 295 U.S. at 78, 88, 55 S.Ct. 629; U.S. v. Chapman, 524 F 3d 1073, 1085 (9th Cir. 2008); U.S. v. Kolayan, 8 F 3rd 1315, 1323, (9th cir. 1993); U.S. Ziskin, 360 F 3rd 934, 943 ( 9th cir. 2003.__

Apparently in order for the trial court to state that it was aware of the statement, then logic would have it that it must have visually observed the statement verifying its existence, however more confounding is the fact that the statement could never be produced at any time for the jury. And if that was indeed the case upon discovering that no such statement existed, it was incumbent that the trial court determines whether the evidence possessed an exculpatory value that was apparent before the existence of the alleged statement surfaced. In this illegal ploy by the state, defendant Keil lost the possibility of complete exoneration. The state's conduct has deprived defendant Keil of a fair and impartial trial. The state's written notice of its intent to use the defendant's alleged statement is of no consequence, simply because as stated the record is completely void of the fact that a statement ever existed and was never produced for the jury.

SEE: STATE VS. GAY, SUPRA.

In his appellate brief, Counselor P. White, Louisiana Appellate Project commented on the childhood friendship between defendant and Detective Smith. While may be true, it should be emphasized that as a responsible peace officer Detective Smith's first priority was to uphold his oath as a police officer and responsibilities by protecting and serving the public within the scope of his duties to the best of his abilities. His testimony should not be construed as a veiled attempt to help a childhood friend, but rather his testimony was predicated on facts as they related to the incident. Upon closer review of this matter, this Honorable Court will readily discover that Detective Smith's testimony accurately parallels with the police report( see exhibit #___A___ , pages 5 and 6), as opposed to the conflicting as well as contradictory testimony of Capt. Culper and Lt. Phelps. In spite of the state's attempts to downplay the relevance of Det. Smith' testimony, the fact remains that his testimony under oath reveals that Officer Culper, Lt. Phelps and ADA Walls acted in collusion by lying about the alleged statement thereby depriving the defendant of his 14th Amendment Constitutional Due Process right. The perjured testimony of Capt. Culper and Lt. Phelps was deliberate and for the state to introduce it and the trial court allowed it to be heard by the jury without correcting it, was a manifest abuse of discretion. Moreover, the trial erred in not granting a mistrial due these discrepancies. *(See, State v. Bizette, 334 So.2d 392 (6/21/76), to also include Napue vs. Illinois, 360 u.s. 264, 795 S.Ct. 1173,3 L.Ed. 2d 1217 (1959).* To prove a Napue claim of prosecutorial conduct based on allowing false testimony to go uncorrected, a defendant must show that the prosecutor acted in collusion with a witness to facilitate false testimony. Fundamental fairness, i.e. due process is offended when the state, although not soliciting false evidence, allows it to go uncorrected when it appears. *U.S.C.A. Const. 14.* When a prosecutor allows a state witness to give false testimony with out correction, the defendant is entitled to a new trial, unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. Granting a new trial based on a Napue violation, which occurs when prosecutor allows a state witness to give false testimony with out correction is proper only if, (1) the statement at issue is shown to be actually false (fact) the testimony of Capt. Culpepper and lt. Phelps was proven to be false by the police reports pgs. 5 and 6 authored by Capt. Culpepper, and the testimony of officer p. smith. (fact) the prosecutor knew they were false (Lee Ann walls) stipulated for the record during the motion to quash and to suppress on 5/ 2/ 11 , that there were no statements made by the defendant , as well as no credible witnesses or any photo or live line up , or any physical or scientific evidence. Some (5) months earlier on 5/2/11, however in  August 2011 she recanted that she intended to introduce a statement allegedly made by the defendant; 3) the statement was never materialized. In October 24th thru 27th 2011 during trial those alleged statements could not be produced for the jury. The false and perjured testimony of Officers Culper and Phelps were material in that as police officers the probability of being believed by the jury was far greater than the probability of not being believed. "Police officers' credibility must be determined the same way and by the same standards as one evaluates any ordinary citizen". It must not be presumed that any other people in official positions are to be more truthful or less truthful than anyone else. The police officers' actions this instant case raises a colorable claim of bad faith. If the witness has willfully and deliberately testified falsely to a material fact for the purpose of deceiving the jury and court, that entire testimony must be cause for reversal, *State v. Walters, 582 So.2d 317, 323 (La. App. 4th Cir. 1991).*

While it is true that it's the function of the jury to assess the credibility of witnesses and not the appellate court, that assessment must rest upon truthful and factual testimony and not false and perjured testimony, as is the issue in this case at bar. The alleged and un-produced confession by Keil as it related by Phelps and endorsed by Culper under oath was key to the state's case against the defendant. The record does not offer any other credible evidence to support the state's allegations that the defendant Keil was the perpetrator of this crime. This case is replete with internal contradictions and irreconcilable conflict...i.e. no type of line-up, no out of court identification, and as the record demonstrates that there is no physical or scientific evidence linking Mr. Keil to this crime; *(See State v. Gipson, 645 S0.2d 1198, 26, 433 La. App. 2d Cir. 10/2694).*

Defendant Keil asserts that it was reversible error for the trial court to grant the state's request to use the alleged of court statement that was never produced, as well as the untrue and unjustified statement of Captain Culper. Such a move by the trial court impeded the defendant's right to a fair and impartial trial under the Sixth (6th) Amendment...U.S.C.A.

The principle criterion of a *Jackson v. Virginia* review is rationality. This is because under *Winship and Jackson, 14th Amendment* due process demands that in state trials, as have been demanded traditionally in federal trials, a criminal conviction cannot constitutionally stand if it is based upon a record

from which no rational trier of fact could find guilt beyond a reasonable doubt, *State v. Mussall, 523 S0.2d 1305 (La. 1988), citing Jackson v. Virginia, supra 443 U.S 317, 99 S.Ct. at 2288, 61 L. Ed.2d at 572*. A reviewing court is required to review the evidence from the prospective of hypothetical rational trier of fact in determining whether such an unconstitutional conviction has occurred. In reviewing the evidence the whole record must be considered because a rational trier of fact would consider all of this evidence, and the actual trier of fact is presumed to have acted rationally, until it appear otherwise. Moreover, the Supreme Court abjure any requirement that a reviewing court retry the issue of guilt, it also rejected all forms of limited review under which a partial one-dimensional view of the evidence is accepted as an index of *(26, 433 La. App. 2d cir. 4th)* of actual probative value.

<div style="margin-left:2em; font-style:italic;">Totality of Circumstances surrounding the case</div>

        The Jackson doctrine does not permit the reviewing court to view just the evidence most favorable to the prosecution and then to decide whether the evidence convinced beyond a reasonable doubt.

        The court requires that criminal defendants be provided with a fair trial, not merely a good faith try at a fair trial.....Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333. Regardless of intent or lack thereof, police actions that results in defendant receiving an unfair trial constitutes a deprivation of due process. In Youngblood, supra the court noted that a conviction obtained by the knowing use of false testimony must fall and suggested that the conviction is invalid even when the perjured testimony is not the result of guile or a desire to prejudice, for its impact was the same, preventing as it did a trial that could in any real sense be termed fair. *Id. at 220, 79 S.Ct. at 1177 quoting, NY 2d 554, People v. Savvides.*

        Defendant further asserts that the testimony of Ms. Sandra Harris, the victim's mother, was irrelevant in that according to the record and her own testimony, she was not on the scene of the crime and that she was actually at work. Furthermore, she never made any statements or was not listed on the witness list. So the relevancy of her testimony was of no value, only elicited by the state to garner sympathy from the jurors as "grieving mother". Fact is, she was surprise witness as such the defense was not adequately prepared to cross-examine her. Her testimony should not have been entered.

        In this instant case at bar, defendant Keil clearly established the fact that the evidence presented by the state, was insufficient and for the reviewing court (1st Court of Appeal) to decide otherwise was grievous error, depriving Mr. Keil of his right to a fair and impartial trial and appeal. This case demands an acquittal in accordance with applicable constitutional, statutory and jurisprudential law.

## ARGUMENT
## ASSIGNMENT OF ERROR
### Prior Altercation
**The trial court erred in allowing Sgt. McDaniel's testimony to be admitted at trial,**
<u>*Relative to a prior altercation between defendant and the deceased.*</u>

        On October 24th 2011, the state in an effort to establish intent and motive filed a notice of intent to introduce evidence of other offenses, under LSA-C. E. article 404 (B) (1). This anticipated testimony was to come from a Sgt. McDaniel's of the Bogalusa Police Department, concerning an earlier altercation the defendant had with the decedent. In his testimony, Sgt. McDaniel's stated that the defendant was upset because the BPD had not arrested Harris for an incident involving that occurred approximately two months earlier, however there was never any report filed, investigations conducted that would have substantiated McDaniel's claim over a three year period before the trial    There was never any surveillance videos, sign in log or any thing that would have corroborated Sgt. McDaniel's story about this prior altercation, and his contention that defendant Keil had made several complaints in person to the Bogalusa Police department particularly a week before the instant offense. Evidence of a prior act or conviction could result in unfair prejudice, i.e. the tendency to lure the fact finder into declaring guilt on grounds different from proof specific to the offense charged. Such an improper ground for finding guilt includes generalizing a defendant earlier bad act into his bad character and taking that as raising the odds that he did the later bad act now charged. In short although propensity evidence is relevant, the risk that a jury will convict for crimes other than those charged or that uncertain of guilt, it will convict anyway because a "bad" person deserves punishment creates a prejudicial effect that out weighs ordinary relevance. *LA. C.E. Art. 404(B)*. In short because propensity is an improper basis for conviction, unless probative value of the evidence tending to show propensity far out weighs the risk of unfair prejudice as required under LA. C.E. 403, such evidence must be excluded. *See, U.S. v. Moccia, 681, Fd. 2d 61, 63 (1st Cir. 1983).*

        In this case at bar, there is no evidence to suggest that the defendant Keil had any propensity to be violent, in fact, he was acquitted of the charged offense of second degree murder, directly as a result of lack of evidence. He was the victim of an attack, not the initiator or the aggressor. The testimony of Sgt.

8

McDaniel's by all accounts was irrelevant, immaterial, and misleading. His testimony was not based upon fact, but speculation and conjecture, because he allegedly told the defendant that his attackers would not be arrested. In fact if Sgt. McDaniel's contentions were true, then why didn't he produce at trial, sign-in logs, or video footage verifying the defendant's alleged visit to the police station with his complaints. In that case, motive and intent could have been established (see Exhibit # ~~B~~ pg. 16 and Tr.) However, since the meeting with McDaniel's never occurred his testimony was baseless and false. The trial courts allowance of his testimony to be introduced at trial is a manifest abuse of discretion. This case demands an acquittal.

        _See State v. Gay, 616 So. 2d 1290 La. App. 2 cir. 1993)_ Prosecutor's prejudicial remark suggesting during cross-examination of defendant that more drugs and paraphernalia existed at defendant's trailer was improper without evidence of the drugs or paraphernalia and warranted mistrial in prosecution for possession with intent to distribute methamphetamine; without evidence of drugs or paraphernalia at the trailer, the references were not part of the res gestae, prosecutor was attempting to show intent to distribute, and no expert testimony indicated that the three and one-half grams of methamphetamine was consistent with distribution. _LSA-C.Cr.P. art. 770_. Witness' prejudicial remark that is deliberately elicited by prosecutor is imputable to state and mandates mistrial. The state presented no evidence during the trial that more methamphetamine or drug paraphernalia, such as scales and baggies, were secreted in the defendant's trailer. It was improper for the prosecuting attorney to suggest by means of specific questions to the defendant that more drugs and drug paraphernalia existed at the defendant's trailer, when he had no evidence to prove their existence. As there was no evidence of other drugs forming an integral part of the transaction, the reference can not have been admitted as part of the res gestae exception. Trial counsel for the defendant should have objected to the references to other crimes. In the instant case, there was no expert testimony from the crime lab or police officers that the amount of drug found was consistent with distribution. Instead, the prosecutor deliberately made a series of references to drugs and paraphernalia supposedly secreted at defendant's trailer to establish the intent to distribute element. The jury may well have convicted Gay of the charged offense because it heard repeated references that he possessed more drugs and paraphernalia at his home. Absent the error, there is a reasonable probability that the jury would have had reasonable doubt respecting the defendant's guilt of the charged offense.

        The testimony of Sgt. McDaniel's must be viewed within the same context as in the arguments against the false and perjured testimony of Captain Culper and Lt. Phelps. This allegation is supported by the undeniable fact that the State lacked evidence to convict. These officers never produced any evidence of a statement or confession, or evidence of a visit to police headquarters to speak to Officer McDaniel at anytime. , _SEE: STATE vs. GAY, SUPRA._

<div align="center">

ARGUMENT

ASSIGNMENT OF ERROR

_False and Perjured testimony_

</div>

**ADA Leann Walls and captain Culpepper and Lt. Donald Ray Phelps committed perjury under oath during trial and motion hearing. (Dated 10/24/-27/2011)**

"Perjury is the intentional making of a false statement, written or oral, in and for the use in a judicial proceeding. In order to constitute perjury, the false statement must be under sanction of an oath or an equivalent affirmation and must relate to matter material to the issues or question in controversy _LSA R.S. 14:123(A). La. C.Cr.P._ And _R.S. 14:124_

        On 10/6/2008, the date of arrest, Captain Culpepper stated in his police report that the defendant Keil did not make any statement, but only invoked his right's to remain silent, see Exhibit # A police report pg. 5, 6. On 8/11/2011 at another hearing ADA Walls informed the court that the state intended to use a statement defendant Keil allegedly made on his date of arrest to Lt. Phelps. The defendant objected to it's admissibility for obvious reasons. It had already been established that two prior hearings no statement existed, see Tr. T. pg. 1110, 1111, 326.

        In this instant case ADA Leann Walls informed the court at a motion to quash hearing, held 5/2/2011, that the motion to quash was moot, because there was no statement to quash or suppress, nor was there any creditable positive eye witnesses. THE motion to suppress and quash also was to suppress alleged state eyewitness and quash indictment, state alleged eyewitness never could pick defendant out of any line-up, no positive I.D. was ever made out of court for (3) years.

At time of trial Lt. Phelps testified under oath that the defendant made a statement when arrested, however Lt. Phelps was not on the scene of arrest, as the testimony of arresting officer Parish Smith confirms that the only officers present at arrest were McClendon, and Brumfield. Captain Culpepper arrived on the scene after the incident had been transported to Bogalusa city jail by patrolman Stogner, see Exhibit # _A_ police report pg. 5, 6.

Moreover, Officer Smith report, and Captain Culpepper report does not document any evidence that the defendant made any statement to Lt. Phelps (1) Phelps was not on scene (2) at trial no alleged statement was ever produced for the jury at any time. Witnesses Culpepper and Phelps' prejudicial remarks that are deliberately elicited by the prosecutor is imputable to the state and mandates a mis-trial, _State v. Gay_, 616 So. 2d 2190 (La App. 2d. 1993). See _State v. Gay_, 616 So. 2d 1290 (La. App. 2 cir. 1993) **Prosecutor's prejudicial remark suggesting during cross-examination of defendant that more drugs and paraphernalia existed at defendant's trailer was improper without evidence of the drugs or paraphernalia and warranted mistrial** in prosecution for possession with intent to distribute methamphetamine; **without evidence** of drugs or paraphernalia at the trailer, the references were not part of the res gestae, prosecutor was attempting to show intent to distribute, and no expert testimony indicated that the three and one-half grams of methamphetamine was consistent with distribution. _LSA-C.Cr.P art. 770_. Witness' prejudicial remark that is deliberately elicited by prosecutor is imputable to state and mandates mistrial. **The state presented no evidence during the trial that more methamphetamine or drug paraphernalia, such as scales and baggies, were secreted in the defendant's trailer.** It was improper for the prosecuting attorney to suggest by means of specific questions to the defendant that more drugs and drug paraphernalia existed at the defendant's trailer, when he had no evidence to prove their existence. As there was no evidence of other drugs forming an integral part of the transaction, the reference can not have been admitted as part of the res gestae exception. Trial counsel for the

Defendant should have objected to the references to other crimes. In the instant case, there was no expert testimony from the crime lab or police officers that the amount of drug found was consistent with distribution. **Instead, the prosecutor deliberately made a series of references to drugs and paraphernalia supposedly secreted at defendant's trailer to establish the intent to distribute element. The jury may well have convicted Gay of the charged offense because it heard repeated references that he possessed more drugs and paraphernalia at his home. Absent the error, there is a reasonable probability that the jury would have had reasonable doubt respecting the defendant's guilt of the charged offense.**

Furthermore, defendant asserts that the court of appeals, first circuit erred in determining this assignment of error lacked merit. Defendant's specific claim for relief relative to the false and perjured testimony assignment is vividly listed in the records. See police report Pg.5, 6 Exhibit# _A_ , also Exhibit # _B_ pg. 9 pro-se brief, and transcript pg.991 – 998 Furthermore, the jury may well have convicted Keil of the offense of Manslaughter because it was repeatedly said from ADA Walls, Captain Culpepper and Lt. Phelps references about a statement alleged to have been made by defendant Keil that could never be produced. Moreover, the testimony of office Smith and Captain Culpepper police report validates this defendant's argument, this case demands acquittal. Absent the error there is reasonable probability that the jury would have had reasonable doubt, respecting the defendant's guilt on the manslaughter offense. Defendant Keil further asserts that Officers Smith testimony relative to his concerns about Lt. Phelps attempts to get him fired is not material to the issues at hand. The unequivocal fact is that Phelps testified under oath to a lie with out being able to verify his allegations. Captain Culpepper Committed perjury when he testified under oath that he knew of a statement that the defendant made, trying to validate Lt.Phelps perjured statement, when Captain Culpepper's police report at time of arrest clearly shows that the defendant never made any statement, and this is why no statement could ever be produced. See Exhibit # _A_ police report Pg.5, 6. Their testimonies were highly prejudicial, erroneous and fatally damaging to defendants defense. Once the jury heard that false and perjured testimony and the State refused to correct it, it substantially influenced the jury, which in turn affected the out come of the trial.

Moreover, once testimony that is proven to be false and to have been a part of a criminal proceeding then that evidence is tainted, thus everything related to it becomes subject to the fruit of the poisonous tree doctrine, criminal law 394, 154 C.J.S. criminal law 770, Evidence 252 – 258.

Furthermore, the testimony by Culpepper and Phelps can not be remotely construed as harmless error, _State v. Snyder, 98-1078, pg. 15 (La. 4/14/99) 750 So.2d 832, 845 cited in Allen._ There is no recorded, written, or video proof to support this lie. Finally on this assignment of error, defendant asserts

that courts must bar the prosecution from implying that police officers or state witnesses are especially telling the truth, or lack motive to lie. Such an implication is obvious where the prosecutor is aware that its witness's testimony is false, yet refuses to correct it, and that implication violates the prohibition against cloaking witnesses in the protective mantle of the State. *(See U.S. v. Gallardo Trapero, 185 F3rd 307, 320, 5th cir. 1999).* In this instant case, it is to infer from Phelps testimony and the States lack of proof to support it, that he was encouraged by the State to provided false testimony in an effort to obtain an illegal unlawful conviction. See Napue v. Illinois, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217(1959) cited in Giles. Mooney v Holohan, 294 U.S. 103, 55 S.Ct. 340 79 L. Ed. 79 (1935). Wherein, U.S. Supreme Court mandated (violation of due process when prosecutor presented perjured testimony). Its not punishment of society for misdeeds of prosecutor, but avoidance of an unfair trial to the accused. *(See 373 U.S., at 87, 83 S.Ct. at 1196) and Berger v. U.S., 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed.1314, 1935; 427 U.S. at 111, 96 S.Ct. at 2401, quoting Berger v. U.S.*

## ARGUMENT
## ASSIGNMENT OF ERROR
### Incomplete record

In this assignment of error defendant Keil asserts that the court of appeals for the first circuit erred in affirming his conviction and denying his motion for rehearing relative to a private conversation between ADA Walls and a jury member during the deliberations. Defendant asserts that ADA Walls was caught by the bailiff in the court house hall way, engaging in conversation with a jury member. Upon discovering this act the bailiff brought it to the attention of the court, wherein all parties involved were summered back in side the court room to discus the matter. ADA Walls took the stand and tried to justify her poison, by stating the she bumped into the jury member on her way to the bathroom. This could never have happened because jury members are watched and escorted by the bailiff, so to say it was an accident is improbable, as jury members are under sequestration. However, the fact is that her exposure to any jury member during deliberation at any time out of the scope of testifying in court is strictly prohibited. It's a denial of the defendants Sixth Amendment constitutional right to receive a fair and impartial trial, when the jury decision process has been compromised. Further, the Appellant Court first Circuit recognized the impropriety of Ms. Walls' behavior, when it became constitutionally curious as to the substance of the defenses argument, and issued an interim order on October 15th 2013, to the trial court reporter to produce the transcript of the private conversation or submit an explanation to the court first circuit of appeals regarding why a transcript could not be generated. The court reporter ignored the order and the court of appeals -first circuit prematurely issued its decision affirming the defendant's conviction without reviewing the transcript in its entirety or seeking an explanation from the court reporter as to why it could not produced. In essence, the appeals court violated its own interim order. Please note that the entire conversation between ADA Walls, the trial judge, and the defense regarding the private conversation was transcribed by the trial court reporter, but for reasons yet unknown to the defendant that entire portion of the record to this date has not been produced. It is the assertion of this defendant that the exparte communication between ADA Walls and jury member during deliberation resulted in prosecutorial misconduct and jury tampering. Fact is that what ever information that was exchanged between ADA Walls and the juror in question is cause for reason to imagine that this particular juror could have been the influential vote that caused the unanimous guilty verdict of manslaughter. *See Art. 873. C.Cr.P.*

The fact that ADA Walls had this conversation with a juror during deliberation could have possibly negated defendant Keil chance to have a vote in his favor *Append v. Jersey, 530 U.S. 466 2000.*

A decision by an appeals court predicated upon an incomplete record is statutorily and constitutionally prohibited, in that it denies a defendant a fair appeal *(see U.S. v. Upshaw, 448 F. 2d 1218 5th cir. 1971) cert. denied 405 U.S. 934, 92 S. Ct. 970, 30 L. Ed. 2d 810, (1972). State v. Ford, 338 So.2d 107, (1976) (U.S v. Taylor, 303 F. 2d 165, 169, (4th 1962); State v. Bizette, 334 So. 2d 392, (La. 1976); State v. Robinson, 387 So. 2d 1143 (La. 1980); also see (La. Const. 1974, art 1, sec 19).* This is obvious grounds for reversal conviction, and sentence and order of acquittal due to incomplete record and denial of a fair appeal, due process clause as it attaches to the *Fourteenth Amendment of U.S. Constitution.* Please note that appellate counsel (Mr. Prentice White) is not the trial counsel and in his brief to the court of Appeal-1st Circuit, he stated that the "ex parte" conversation between ADA Walls and the jury members

SEE Exhibits D & E

*SEE TRIAL TRANSCRIPTS*

BENCH CONFERENCES NOT RECORDED AT ALL for Jury selection or objection at trial when D.A. and counsel called to speak at bench with Judge Due to objection by counsel

(ALL PEREMPTORY strikes + challenges for cause, made at bench conferences, were not recorded, Neither for objections at trial)

STATE VS. LANDRY, 751 so. 2d 214, 97-0499 LA. 6-29-99

SEE: INCOMPLETE RECORD

was before jury deliberations. However, the fact is that this conversation was held "during" jury deliberations, when the jury had retired to the jury room to deliberate. The trial record stopped at closing arguments and started again when the jury stated its decision. The entire part where the "bailiff told the judge, and the defense was brought into the court, as well as ADA Walls to explain why she was talking to a juror in the hallway, and was also transcribed, has been totally left out of the trial transcripts. The missing portion of the transcript in question here is the part that is supposed to be transcribed between the retiring of the jury for deliberations and the reaching of its decision. The entire portion of the jury tampering has been totally left out. This fact was complained of, to the court of appeal-1st circuit who in return issued an interim order demanding the district court reporter to produce the transcript ex parte conversation between ADA Walls and the juror during jury deliberations; or in the interim the court reporter was instructed to give an explanation as to why said transcript could not be produced. The district court reporter ignored all orders given by the Court of Appeal -1st Circuit, and gave no explanation for her actions or lack thereof. *(See exhibits "D&E").* Defendant further asserts that the ex parte communication between ADA Walls and the juror during deliberations was a substantial violation to his right of due process and for the appeals court to render a decision in this case without the benefit of the entire record requires reversal. The purpose of constitutional and statutory provisions, is to make certain that all proceedings in felony cases are recorded so that its possible for a party to support his assignments of error on appellate review....(*See Article 843, La. Const. 1974).* When a portion of the trial has not been recorded, a party cannot perfect assignments of error which occurred during that portion of the trial, and the appellate court cannot review any such errors, pursuant to errors. *Pursuant to C.CR.P, art. 920, in order to insure that the trial was properly conducted, State v. Ford, 338 So.2d 107 (La.1976); Hardy v. U.S. 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed. 2d 331(1964);* The Supreme Court has mandated that through no fault of the defendant a transcripts of the trial proceeding is no longer available; and under these circumstances this court has no choice but to reverse the conviction; Hardy, supra. In Louisiana, as in federal courts, on appeal from a felony conviction it is an absolute right. *La. Const., art. 7, section 10; La. Const. art. 5, section 5, (D) (2) (1974); Coppedge v. U.S. 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed. 2d 21 (1962).* Without a complete record from which a transcript for appeal maybe prepared, a defendant's right of appellate review is rendered meaningless.

Defendant Keil deserves a right to have his appeal heard and decided on all of the evidence to include, but not limited to a full and complete record. The best interest of justice requires that since his fate was decided without the benefit of a complete record, he must be afforded a reversal and ultimately an acquittal. ~~...~~

*ARGUMENT*
*ASSIGNMENT OF ERROR*
*Unlawful and Illegal Verdict*
*The district court erred in denying defendant's motion for new trial, post judgment verdict of acquittal based upon a substantial lack of evidence and jury tampering, perjured & false testimony.*

The trial court erred in denying the defendant's motion for new trial and motion for post judgment verdict of acquittal. These motions are founded upon the idea that an injustice has been done the defendant. Namely, that the conviction is against the weight of the evidence. The weight of the evidence specifically refers to determination by the trier of fact that a greater amount of credible evidence supports one side of an issue over the other; *Tibbs v. Florida, 457 U.S. 31, 37, 102 S.Ct. 2211, 2216 (1982).*

The trial court improperly denied motion for rehearing, and motion for post verdict judgment of acquittal, when it is apparent from the record, that there was impropriety on the part of ADA Walls and her private conversation with jury members in the midst of an ongoing trial. Additionally, the trial and appeals courts denials deprived Mr. Keil the opportunity to investigate the allegations reported by the bailiff, and consequently deprived him of the right to have a fair trial and appeal. Notably, the defendant Keil was found not guilty of the offense charged (2nd Degree Murder), due to insufficient evidence, therefore the verdict of guilty to manslaughter was rendered in error when considering that the elements of manslaughter was not satisfied in this instant case. There was never any physical or scientific evidence offered by the state; there was no out of court identification as to a positive i.d.; there never were any confessions statements or otherwise. Not to mention the perjured and false testimony of the police officers, namely Captain Culpper, Lt. Phelps and Sgt. McDaniel.

Furthermore, defendant asserts that the in court identification was highly suggestive in that the media exposure three (3) years earlier by plastering his face on the front page of the newspaper and the Internet absent an out of court identification prejudiced him by allowing the alleged eyewitnesses to see

him for the first time. This is supported by the fact that at the time of the incident, no one was able to positively identify the defendant as the perpetrator of this crime, as attested to by the _911 call._ This act irreparably damaged the defendant's right to present a defense; and should have been stopped at the motion to suppress and quash hearing on 5/2/2011, which was erroneously denied by the trial court. (See exhibit "B", page 7, 8, & 12).As to jury tampering by Captain Culpper, (see exhibit "B", page 11, see also TR., page 884). *Trial Transcripts )*

In essence the defendant argues that, the verdict of manslaughter in this instant case indicates that the jury did not find enough evidence to conclude that he committed the crime of murder, thus the conflicting, inconsistent and false statements by Officers Culpper, Phelps and Mc Daniel was highly prejudicial as well as coupled with the jury tampering by the officers above and ADA Walls, insufficient evidence, was not sufficient to establish a guilty verdict of manslaughter. (_See exhibit "B" pages 16-19); and Degraaf v. State,ALA. App., 37 So2nd 130, arguments 3,7,8,10,11.; Champion v. State 5 Div. 271 cited as 44 So2nd 616, argument # 7; Edwards v. State, Ala., App. 34 So2d 173, arguments 1,2,3, and 4._

Pursuant to _**Article 851 (5),**_ the trial judge reviews the evidence as the 13th juror when either 851. (1) or article 851 (5) are the grounds for a new trial. _….State v. Watts, 835 So2nd 441, 449, (La. 2003), see also State v. Jeanlouis, 683 So.2nd 1355 (La. App. 3rd Cir. 1996);_ the 13th juror standard directs the trial court to reweigh the evidence and either agree or disagree with jury's decision. A trial judge who sits as a 13th juror entertains such questions as 1) Was the verdict contrary to law, 2) Was the verdict contrary to the evidence, 3) Does the verdict falls short of serving the best interest of justice. Thus, if the answer to any of these questions such as above suggested is yes, then the defendant's conviction shall not stand. Therefore, this court shall reweigh the evidence against the defendant as the 13th juror, which necessarily includes a review of the credibility of the witnesses and the lack of physical and scientific evidence that the state miserably failed to present. When there is an improper denial and there is a specific showing of prejudice, a reversal is the proper remedy. _(State v. Haarala, 398 So.2d 1093,_ 1099,(La. 1981). Therefore when the jury acquitted the defendant of second degree murder, it was lawfully left with only one other verdict, that verdict is not guilty, see _**State v. Lombard, 486 So.2d 106, (1986).**_ This instant case does not have any evidence that would remotely justify a verdict of guilty to manslaughter, nor were the elements satisfied. Even though ADA Walls attempted to establish motive by way of Sgt. McDaniel's testimony and his rendered opinion that the issue was retaliation, there was no evidence to support such an outlandish allegation. This case demands an acquittal.

### ARGUMENT:
### ASSIGNMENT OF ERROR
### INEFFECTIVE ASSISTANCE OF COUNSEL
#### _Defendant's trial counsels were ineffective at trial._

The right of defendant in a criminal proceeding to the effective assistance is mandated by the _Sixth (6th) Amendment to the U.S. Const., State v. Willars, 27, 394, (La. App. 2d Cir. 9/27/95, 661 So. 2d. 673). The U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 274 (1984),_ established a two prong test to determine ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient such that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the sixth amendment. Strickland v. Washington, supra. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency required by prevailing professional standards in criminal cases.

The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. _State v.Willars,_ supra. _**The U.S. Supreme Court, in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),**_ established a two-prong test to determine ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient such that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, supra. The relevant inquiry is whether counsel's representation fell below the standards of reasonableness and competency required by prevailing professional standards in criminal cases. _**State v.Willars,**_ supra. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has [43,_291 La.App. 2 Cir. 12] exercised reasonable professional judgment. State v. Grant, 41,745 (La.App. 2d Cir.4/4/07), 954 So.2d 823, writ denied, 2007-1193 (La.12/7/07), 969 So.2d 629._ Secondly, the defendant must show that counsel's errors were so serious as to

13

deprive the defendant of a fair trial, with a reliable result. ***Strickland v. Washington, supra.***   There is a strong presumption that the conduct of counsel falls within the wide range of reasonable professional assistance.  The defendant bears the burden of proving that certain acts or omissions by his counsel were deficient and that this deficiency led to an unreliable outcome.  The defendant must prove actual prejudice before that relief will be granted.  It is not enough to show that the error had some conceivable effect on the trial's outcome.  To prevail under the dual test of Strickland, the defendant must show that, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. ***State v. Willars, supra.***

A conviction will not be overturned on the grounds of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial.  An erroneous instruction is subject to harmless error review or, in the case of an ineffective assistance of counsel claim, an analysis of whether the defendant was prejudiced by the error.  The question becomes whether it appears beyond a reasonable doubt that the erroneous instruction did not contribute to the jury's finding of guilt or whether the error is unimportant in relation to everything else the jury considered, as revealed in the record. Stated [43,291 La.App. 2 Cir. 13] another way, the appropriate standard for determining harmless error is whether the guilty verdict was surely attributable to the jury charge error. ***State v. Gaddis, 36,661 (La.App.2d Cir.3/14/03), 839 So.2d 1258, writ denied, 2003-1275 (La.5/14/04), 872 So.2d 519, cert. denied, 544 U.S. 926, 125 S.Ct. 1649, 161 L.Ed.2d 487 (2005); State v. Cooper, 2005-2070 (La.App. 1st Cir.5/5/06), 935 So.2d 194, writ denied, 2006-1314 (La.11/22/06), 942 So.2d 554.***

As a general rule, a claim of ineffective assistance of counsel should be raised on an application of post conviction relief in the trial court, so that a full evidentiary hearing maybe held under La.C.Cr.P. [13][14][15] The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v Willars, supra.   The U.S. Supreme Court, in ***Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),*** established a two-prong test to determine ineffective assistance of counsel.  First, the defendant must show that counsel's performance was deficient such that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. > Strickland v. Washington, supra.   The relevant inquiry is whether counsel's representation fell below the standards of reasonableness and competency required by prevailing professional standards in criminal cases. > State v. Willars, supra.   The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence.  A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has ***[43,291 La.App. 2 Cir. 12] exercised reasonable professional judgment.  > State v. Grant, 41,745 (La.App. 2d Cir.4/4/07), 954 So.2d 823, writ denied, > 2007-1193 (La.12/7/07), 969 So.2d 629.***

Secondly, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, with a reliable result. ***Strickland v. Washington,*** supra.   There is a strong presumption that the conduct of counsel falls within the wide range of reasonable professional assistance. The defendant bears the burden of proving that certain acts or omissions by his counsel were deficient and that this deficiency led to an unreliable outcome.  The defendant must prove actual prejudice before that relief will be granted.  It is not enough to show that the error had some conceivable effect on the trial's outcome.  To prevail under the dual test of Strickland, the defendant must show that, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. State v. Willars, supra.

A conviction will not be overturned on the grounds of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial.  An erroneous instruction is subject to harmless error review or, in the case of an ineffective assistance of counsel claim, an analysis of whether the defendant was prejudiced by the error.  The question becomes whether it appears beyond a reasonable doubt that the erroneous instruction did not contribute to the jury's finding of guilt or whether the error is unimportant in relation to everything else the jury considered, as revealed in the record. Stated [43,291 La.App. 2 Cir. 13] another way, the appropriate standard for determining harmless error is whether the guilty verdict was surely attributable to the jury charge error. ***State v. Gaddis, 36,661 (La.App.2d Cir.3/14/03), 839 So.2d 1258, writ denied, 2003-1275***

*(La.5/14/04), 872 So.2d 519, cert. denied, 544 U.S. 926, 125 S.Ct. 1649, 161 L.Ed.2d 487 (2005); State v. Cooper, 2005-2070 (La.App. 1st Cir.5/5/06), 935 So.2d 194, writ denied, 2006-1314 (La.11/22/06), 942 So.2d 554.* As a general rule a claim of ineffective of counsel should be raised on an application for post conviction relief in the trial court, so that a full evidentiary hearing maybe held under *Louisiana C.Cr.P., art. 930 .State v Williams, 33, 581 (La.App. 2d Cir. 6/21/00), 764 So 2d 1164).* However, if the record fully discloses the evidence necessary to decide the issues, it may be considered on direct appeal in the interest of judicial economy....State v. Willars, supra.

In this assignment of error, the defendant asserts that his lead defense counsel Mr. John Lindner was on the case less than a week.  From an investigative point of view, that is hardly sufficient enough time for him to have competently familiarized himself with the many complicated issues in a case of the magnitude as a second degree murder case. In fact, the defendant had only one visit with attorney Lindner, and that was over the weekend prior to trial. That visit lasted less than one (1) hour. This hardly constitute adequate preparation of a formidable defense against the offense charged, particularly when the state's case was riddled with fabrications, inconsistent and perjured testimony, non credible witnesses, a lack of physical/scientific evidence, no confession and a highly suggestive in court identification coupled with jury tampering.

The defendant further asserts that his counsel was ineffective at trial when he refused to subpoena and produce the witnesses he requested to testify on his behalf. (See exhibit "F"). This list included the names of all the witnesses he wished to be subpoenaed. Included on that list was the defendant's mother, Ms Geraldine Davis, a very important witness because she would have testified to the veracity of the defendant's alibi. Ms. Davis was indeed in court for trial in spite of not being subpoenaed, but counsel Lindner refused to allow her to testify against the defendant's wishes as an alibi witness. This also can be verified by Ms. Davis, who was only allowed to testify at the motion to suppress on 10/24/11. (Ms. Davis' testimony verifying her son's whereabouts on the date and time of the incident is transcribed in the trial transcripts during the motion to suppress, dated 10/24/2011).

Counsel Lindner's refusal to subpoena defendant's witnesses violated his Sixth (6th) Amendment right to compulsory process, which is a constitutionally guaranteed right. This right is embodied in both federal and state constitutions and codified in statutory law, *La. C.Cr.P. art., 731, State v Lee, 446 So.2d 334 (La. App. 4th Cir. 1984); see also Kemp v. Leggett, 645 F2d. 453 (5th Cir. 1/27/1981), No. 80- 7471.*

It is the duty of competent counsel to strenuously test the adversarial process through investigations, interviews with defense and state witnesses as well. In the instant case at bar, attorney Lindner failed to properly conduct any of the above, as co-counsel John Almerico failed to do any of the above as well. The fact that Mr. Lindner was allowed to become the lead counsel and argue the case with less than a week's briefing of the case has to be deemed an unprofessional and ineffective performance. (See Kemp v. Leggett, supra.) and exhibit "B", pages 23-26.

Jurisprudence holds that prejudicial error arises when the absent witness is vital to the defense, *see State v. Duplesssis, 2000-2102 (La. App. 4th Cir. 3/28/2001), 785 So.2d. 939); State v Green, 448 So2d. 782 (La. App.2d Cir 1984); State v. Peterson, 619 So2d. 786, 790, (La App. 4th Cir 1993).* Defendant further submits as evidence *that* such a subpoena list of his witnesses did and does exist, see exhibit "F". In fact, this same list was copied and verified by hospital personnel while the defendant was under court order concerning a competency examination to stand trial. In essence, the defendant's constitutional right to present a defense was violated by his counsel's failure to have those subpoenas served.

Defendant Keil asserts that counsel was even more ineffective when he did not object to the fact that the state conducted a highly suggestive in court identification, when the record reveals that no one initially identified the defendant as the "shooter", and it was only due to the fact that the defendant's face had been unduly exposed in the news media without being positively identified from the start. *(see TR, pages 1110, 1111 and 326); see also exhibit "B" page 12).*

Had counsel made the jury aware of these points and objected to the in court identification, then the jury's understanding of these events had the potential to put the  state's witnesses' credibility in serious doubt, thus creating the possibility of a complete acquittal  as opposed to the finding of guilty to the lesser verdict of manslaughter. Fact is that at the time of the incident, the witnesses could not positively identify the defendant when the events were freshest in their minds, so it is highly inconceivable that they could positively identify him three (3) years later at trial. *(See Manson v Brathwaite, 432 U.S. 98, 97 S. Ct. 2243, 53 L.ed.2d 140).* Furthermore, counsel's ineffectiveness is even more evident considering his failure to make a contemporaneous objection to the lesser included guilty verdict of manslaughter and improper jury

15

instructions as well. It is obvious from the facts that "retaliation" is not an element of manslaughter. The defendant maintains his innocence of this crime, however, the time frame between the initial altercation and the actual incident as defined in the code of criminal procedure would not remotely figure in this instant case. The elements of manslaughter are 1) sudden passion, 2) heat of blood; immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Under such circumstances the state bears the burden of proof. Moreover, the jury is free to infer the mitigating circumstances from the evidence; provocation shall not reduce a homicide to manslaughter, if the jury finds that an average person's blood would have cooled. The state never offered any evidence to remotely suggest that this instant crime was a crime of sudden passion, heat of blood, or provocation to an extent that would have caused the defendant to act in accordance with the elements of manslaughter. Therefore, when the jury acquitted him of the charge of second degree murder, it was lawfully left with only one other verdict, that is verdict of not guilty….*See State v. Lombard, 486 So.2d 106, (1986).* Counsels in the instant case were incompetent and ineffective. Their performances did not rise to the competency and adequate level mandated by Strickland v. Washington, supra. John Lindner and John Almerico inadequate performances caused a gross miscarriage of justice, which unfairly denied the defendant the right to a fair and equitable trial. Their willingness to allow the state to mislead the jury without strenuously objecting rendered a false verdict of an offense whose elements do not fit the evidence submitted. The only remedy for such ineffective is an acquittal. ==*See also exhibit "B", pages 23-26. and see also trial transcripts listed on those pages.*==

<div align="center">CONCLUSION</div>

The defendant/Appellate, pro se Curtis A. Keil, request that this Honorable ~~Supreme~~ Court by way of its supervisory powers vacate and set aside his conviction and sentence for manslaughter and rule an acquittal in the defendant's favor, due to the state's obvious lack of physical and scientific evidence, no out of court identification, positive or otherwise, combined with an illegal highly suggestive in court identification due media exposure, perjury and false statements as well as jury tampering.

Furthermore, no statement or confession was ever made in the three (3) years awaiting trial, and no statement was ever produced or presented at trial for the judge, jury or defense or for the motion to suppress hearing at any time. Moreover, for the state to try and deceive this Honorable Court, as it did the jury and the court of appeal' 1st cir., by saying a statement existed, and write it in their argument as if it was produced and presented, is a bold and calculated lie. ==See exhibit "A", pages 5 and 6, police reports.== This also shows the obvious prosecutorial misconduct, perjury and false statements, malfeasance in office, malfeasance in office tampering with evidence, and lack of evidence to convict, and errors in denying defendant's motion to quash and suppress on ==5/2/2011.== ✗ 8-10-09 →

==Late disclosure as argued by appellate counsel has nothing to do with the fact that the evidence that the state said it had could never be produced or presented. *See State v. Gay, supra.* The record will show and prove that no statement or confession on behalf of the defendant is entered anywhere in the record.==

==In a nutshell, this instant case reeks of prosecutorial misconduct, unlawful verdict, jury tampering, decisions rendered upon an incomplete record, perjury and false statements, ineffective assistance of counsel, insufficient and inadmissible evidence. It is incumbent upon this Honorable reviewing Court to render justice in this matter by reversing the lower courts decisions and entering an acquittal, ordering the immediately discharge of this defendant, Curtis Keil.== The defendant prays that this be done in the name of Jehovah-God and His Son's Name and blood Jesus Christ, my Lord and Savior. Amen.

RESPECTFULLY SUBMITTED:

*Curtis Keil* , pro se litigant

==The defendant, Curtis A. Keil Pro se'== Prays this Honorable court will allow Him some ==latitude as He is not a trained Professional== SEE: ==Bankston vs. Alexandria Neurosurgical Clinic,== 94-693 (LA. App. 3 Cir. 12-7-94) 659 So.2d 507 ==Connolly vs. Connolly, 316 So.2d 167, 168 (LA. App.== 4th Cir. 1975.) ==Rochon vs. Consolidated Constr. Co., 452 So.2d 409== (LA. App. 3d Cir. 1984)

**AFFIDAVIT**

I, do herby declare under penalty of perjury that I am the pro se litigant in the above motion and that all of the facts and or allegations are true and correct to the best of my knowledge, information and belief.

THUS SIGNED AND DONE ON THIS ~~26~~ day of ~~~~, 2014.

7th       DECEMBER

Affiant

WITNESSES:

CERTIFICATE OF SERVICE

I, Curtis A. Keil, do hereby certify that I have caused a true and correct copy of the foregoing Pro Se Brief was mailed to opposing counsel of record ~~~~

Curtis Keil, Pro Se

PLEASE SERVE: